1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HUNTON & WILLIAMS LLP**
Ann Marie Mortimer (SBN 169077)
*amortimer@hunton.com*
Jason J. Kim (SBN 221476)
*kimj@hunton.com*
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

Daniel G. Vivarelli, Jr. (admitted *pro hac vice*)
*dvivarelli@hunton.com*
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

David A. Kelly (admitted *pro hac vice*)
*dkelly@hunton.com*
Joshua M. Kalb (admitted *pro hac vice*)
*jkalb@hunton.com*
600 Peachtree Street, N.E., Suite 4100
Atlanta, Georgia 30308-2216
Telephone: (404) 888-4000
Facsimile: (404) 888-4190

**WHGC, P.L.C.**
John Giust (SBN 196337)
*JohnGiust@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, California 92660
Telephone: (619) 993-1656
Facsimile: (949) 833-2281

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| IPS GROUP, INC., a California corporation, | CASE NO.: 15-cv-1526-CAB-MDD |
| Plaintiff, | ***DAUBERT* MOTION TO EXCLUDE OPINION TESTIMONY OF DAVID WILLIAMS** |
| v. | |
| DUNCAN SOLUTIONS, INC., a California corporation, and DUNCAN PARKING TECHNOLOGIES, INC., a Delaware corporation, | **DATE:** **September 5, 2017** **TIME:** **9:00 a.m.** **Courtroom: 4C** |
| Defendants. | |

# **TABLE OF CONTENTS**

I.     BACKGROUND ............................................................................... 1

II.    THE DAUBERT INQUIRY .............................................................. 2

III.   MR WILLIAMS IS NOT AN EXPERT IN THE PARKING
       INDUSTRY. ..................................................................................... 3

       A.    The "Expert Report" of Mr. Williams. ................................... 3

       B.    Mr. Williams Has No Knowledge of the Parking Meter Industry. ...... 5

       C.    Mr. Williams Has No Knowledge of City Procurement of
             Parking Meters. ..................................................................... 7

       D.    Mr. Williams Has No Knowledge of Parking Meter Needs of
             Cities Generally. ................................................................... 8

       E.    Mr. Williams Admits That He Is Not A Person of Ordinary Skill
             In The Art. ............................................................................. 9

       F.    Mr. Williams Methodology is Suspect. ............................... 11

IV.    CONCLUSION. ............................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Andrew v. Metro North Commuter R. Co.*
    882 F.2d 705 (2d Cir. 1989) ................................................................................ 2

*Daubert v. Merrell Dow Pharmaceuticals*
    509 U.S. 579 (1993) .................................................................................... 2, 11

*G.E., Inc. v. Joiner*
    522 U.S. 136, S.Ct. 512 L.Ed.2d 508 (1997). ...................................................... 11

*Graham v. John Deere Co.*
    383 U.S. 1 (1966). ........................................................................................ 10

*KSR Int'l v. Teleflex, Inc.*
    127 S. Ct. 1727 (U.S. 2007). ............................................................................ 10

*Kumho Tire v. Carmichael*
    526 U.S. 137 (1999) ........................................................................................ 2

*Pooshs v. Philip Morris USA, Inc.*
    904 F. Supp. 2d, 1009 (N.D. Ca. 2012) ......................................................... 6, 11

*Stockton East Water Dist. v. United States*
    109 Fed. Cl. 760 (Fed. Cl. 2013) ....................................................................... 6

*United States v. Jackson*
    425 F.2d 574 (D.C. Cir. 1970) .......................................................................... 2

**STATUTES**

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................... 4

F.R. Evidence, Rule 702 .......................................................................................... 2

## OTHER AUTHORITIES

29 Charles A. Wright. et al.
    Federal Practice & Procedure § 6265 at p. 255 & nn. 34 & 35 (1977). ................ 3, 7

### *DAUBERT* MOTION TO EXCLUDE OPINION TESTIMONY OF DAVID WILLIAMS

Defendants Duncan Solutions, Inc. ("DSI") and Duncan Parking Technologies, Inc. ("DPT"), both collectively herein "Defendants," seek an order from the Court excluding the proffered opinion testimony of Plaintiff's witness David Williams.

## I.    BACKGROUND

The present case involves a patent infringement claim by Plaintiff IPS, Inc. ("IPS) against Defendants, concerning two patents in the field of parking meter technology.    In response to Defendants' invalidity positions concerning obviousness, Plaintiff responded on the merits with a report from its technical expert, Dr. Tajana Rosing, Ph.D., *and in addition* submitted an "expert" report of David Williams which purports to provide opinions regarding secondary indicia of non-obviousness.  *See* Declaration of John Giust ("Giust Decl."), Ex. 1 (Report of David Williams).   By this motion, Defendants seeks to exclude the opinions outlined in Williams report concerning secondary indicia of non-obviousness.

Mr. Williams' only experience with parking meters is his employment by Culver City, where he held the position of parking meter technician, having responsibility for the *repair and maintenance* of parking meters.  *See* Giust Decl, Ex. 1, ¶7.  Mr. Williams does not have the training, education, background or specialized knowledge to opine on secondary considerations of non-obviousness as to the *industry generally*, including (1) whether there was a long felt need in the public parking industry for the subject meters; (2) the degree to which the meters have enjoyed commercial success in the industry; (3) the degree to which the meters received praise in the public parking industry; (4) the degree to which the meters yielded surprising and unexpected results in the industry; (5) whether others tried and failed to meet the long felt needs in the public parking industry; and (6) whether the art or collective knowledge in the field taught away from the invention or created skepticism about whether the invention would provide a viable solution.

1    *See* Giust Decl, Ex. 1, ¶2.  Indeed Mr. Williams lacks any specialized knowledge
2    for the parking meter industry in general and also specifically for each of these 6
3    categories on which he proffers opinions.

4    **II.     THE DAUBERT INQUIRY**

5           Rule 702 of the Federal Rules of Evidence provides for the admissibility of
6    expert testimony in the federal courts, setting the following parameters:

7           If scientific, technical, or other specialized knowledge will assist the
8           trier of fact to understand the evidence or to determine a fact in issue, a
            witness qualified as an expert by knowledge, skill, experience, training,
9           or education, may testify thereto in the form of an opinion or otherwise,
10          if (1) the testimony is based upon sufficient facts or data, (2) the
            testimony is the product of reliable principles and methods, and (3) the
11          witness has applied the principles and methods reliably to the facts of
12          the case.

13          F.R.E 702; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 149-150
14   (1999); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591-595 (1993).
15   Although Rule 702 affords a court wide latitude to admit expert testimony, such
16   testimony is inadmissible if it does not meet two related requirements: (1) it must
17   be based on the special knowledge of the expert; and (2) it must be helpful to the
18   finder of fact. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 508 U.S. 579,
19   589-91 (1993); *Andrew v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2d
20   Cir. 1989)(For an expert's testimony to be admissible ... it must be directed to
21   matters within the witness' scientific, technical, or specialized knowledge and not
22   to lay matters which a jury is capable of understanding and deciding without the
23   expert's help"); *United States v. Jackson*, 425 F.2d 574, 576 (D.C. Cir. 1970) ("'To
24   warrant the use of expert testimony ... two elements are required. First, the subject
25   of the inference must be so distinctively related to some science, profession,
26   business or occupation as to be beyond the ken of the average layman, and second,
27   the witness must have such skill, knowledge or experience in that field or calling as
28

1  to make it appear that his opinion or inference will probably aid the trier in his
2  search for truth'") (quoting McCormick, Evidence § 13)).

3      The burden is on the party offering the proposed expert opinion testimony to
4  prove by a preponderance of the evidence that the testimony satisfies the
5  requirements for admissibility. *See Daubert*, 509 U.S. at 592 n.10. An expert for
6  one purpose is not an expert for all purposes. "Even where a witness has special
7  knowledge or experience, qualification to testify as an expert also requires that the
8  area of the witness's competence matches the subject matter of the witness's
9  testimony." *See* 29 Charles A. Wright. et al., Federal Practice & Procedure § 6265
10 at p. 255 & nn. 34 & 35 (1977).  Here, Mr. Williams' knowledge on repair and
11 maintenance of Culver City parking meters does not match the proffered opinions
12 concerning industry wide practices and the technical area of non-obviousness.

13 **III.  MR. WILLIAMS IS NOT AN EXPERT IN THE PARKING**
14 **INDUSTRY.**

15     As stated above, Mr. Williams ultimately seeks to offer opinions on the
16 "public parking industry" and the "collective knowledge in the field."  As revealed
17 at his deposition, however, Mr. Williams has no knowledge of the parking industry
18 or the state of collective knowledge in the field, even considering his work
19 maintaining and repairing meters for Culver City.

20     **A.    The "Expert Report" of Mr. Williams.**

21     The "expert" report of Mr. Williams, attached as Giust Decl, Exhibit 1
22 hereto, purports to set out a detailed 35 page analysis of the parking meter industry
23 and the benefits of the patented IPS meters, ending with "Appendix A" which
24 supposedly lists the materials reviewed by Mr. Williams.  All is not as it seems.  At
25 his deposition it was revealed that Mr. Williams spent a *total* of 8 to 10 hours on
26 the report.  *See* Giust Decl, Ex. 2, 44: 20-25; 45:14-48:6.  Given that Appendix A

27
28

1   contains over 1,000 pages of documents[1] it would have been humanly impossible
2   to prepare a 35 page report and review the items listed in Appendix A in 8 to 10
3   hours.[2]   Tellingly, at his deposition, Mr. Williams had no idea what was cited in
4   Appendix A, he could not confirm whether he actually reviewed the documents
5   cited in Appendix A without being provided with each document individually.   *See*
6   Giust Decl., Ex 2, at 110:3-113:21; 114:21-115:1-11; 116:11-19; 117-15-118:7.
7   He also refused to answer as to whether or not he typed the expert report (or who
8   "manned the keyboard" and "pushed the buttons"), and refused to identify which
9   attorneys he worked with.   *See* Giust Decl., Ex. 2, 41:6-44:19.   Moreover he kept
10  no records on how much time he spent on the case.   Giust Decl., Ex. 2, 48:24-49:3.

11       Expert disclosures "... must be accompanied by a written report—*prepared*
12  and signed by the witness."   Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).   It is not
13  possible that Mr. Williams or any single retained human witness could have
14  "prepared" this report in 8 to 10 hours, the report makes a mockery of Rule 26.
15  What is evident is that IPS' counsel wrote the 35 page report, collected exhibits
16  favorable to their side, and contacted Mr. Williams, a friendly witness whose
17  interview appears on IPS' web site.   *See* Giust Decl., Exhibit 3 hereto ("Interview
18  With David Williams..." posted on IPS' web site).   Having a friendly witness sign
19  the document with a minimal review is not what the Federal Rules require.

20

21  ───────────────

22       [1] The third and fourth entries of Appendix A list IPS-DUNC 0002107 through
    IPS-DUNC 0002327 (221 pages) and IPS-DUNC 0002328-0003139 (812 pages)
23  as document reviewed, which is 1033 pages in total.

24       [2] Assuming, generously, that Mr. Williams spent 5 hours meeting with counsel
25  to review the report prepared for him in advance, and 5 hours reviewing
    documents, he would have had to spend an impossibly short average of 18 seconds
26  per page to review 1,000 documents (There are 18,000 seconds in 5 hours, so the
    average for 1,000 pages is 18 seconds).   However, the list of documents reviewed
27  in Appendix A is *more* than 1,000 pages.

28

1    Mr. Williams spent an impossibly short 8-10 hours of cursory review on
2    thousands of pages and signed the report after secretive meetings with unknown
3    counsel for an unknown time where unknown individuals typed the document.
4    Had IPS' attorneys actually consulted Mr. Williams on the substance of the report,
5    they would have learned what was revealed at his deposition- that he has no
6    knowledge of the parking meter industry nor the opinions contained in the sham
7    document.

8    **B.    Mr. Williams Has No Knowledge of the Parking Meter Industry.**

9    As a parking meter technician, Mr. Williams testified his job was to "repair,
10   maintain and troubleshoot" parking meters. Ex. 2, 16:4-6. He is only familiar with
11   the following 7 parking meters from two companies (both parties to this case): the
12   IPS pay-station, IPS M3, IPS M5, Duncan Pay-station, Duncan mechanical,
13   Duncan Eagle, and Duncan CK.    Giust Decl., Ex. 2, 10:20-11:1. He has seen
14   others, such as those from POM, but cannot recall the model names and is not
15   familiar with their operation. Giust Decl., Ex. 2, 11:2:12-1; 38:20-23.

16   Mr. Williams report makes much of the industry associations and meetings
17   he attended. *See* Giust Decl., Ex. 1, ¶9, ¶11, ¶13. At deposition, Mr. Williams
18   claimed to have attended over 20 conferences from the California Public Parking
19   Association (CPPA), but cannot recall the substance of any meeting. *See* Giust
20   Decl., Ex. 2, 13:14-14:1; 24:16-23. He testified that he attended a smaller number
21   of International Parking Institute (IPI) conferences and recalls nothing about the
22   subject matter of the conferences. *See* Giust Decl., Ex. 2, 14:4-18; 24:16-23. He
23   has not received any certifications from either organization. Giust Decl., Ex. 2,
24   14:19-21. He cannot recall the names of any board members or presenters from
25   IPI. Giust Decl., Ex. 2: 15: 3-12. He could not identify any officers or directors
26   of IPI, even when presented with their images from the IPI web site. Giust Decl.,
27   Ex. 2, 103: 12-24; Giust Decl., Exhibit 4 (images of IPI officers and directors from
28   IPI web site). He could not recall the subject matter of any training classes, nor the

1    individuals who presented the training. Giust Decl., Ex. 2, 21:3-22. While he

2    testified that he learned of additional parking meters through IPI, he could not

3    recall which ones. Giust Decl., Ex. 2, 23:4-18. Other than CPPA and IPI, he could

4    not recall any parking meter related conferences. Giust Decl., Ex. 2, 24:12-15.

5         His only certifications are by IPS and Duncan, limited to repair and

6    maintenance of IPS and Duncan meters. *See* Giust Decl., Ex. 2, 19:18-25; 23:19-

7    25; 24:4-8.

8         Mr. Williams was confronted with industry publications cited in his report,

9    and which are attached as Giust Decl., Exhs. 5 and 6 hereto. These publications

10   list the names of companies that are "leading players" (Ex. 5, p. 10) or "key

11   vendors" (Ex. 6, p. 42) in the parking meter industry. But Mr. Williams had not

12   even heard of most listed companies, and he stated he had no knowledge of the

13   operation or functionality of parking meters from the following companies in the

14   industry:  Abe McGann, Cale Group, Hecteronic, Metric Group, Parkeon, WPS

15   Parking Solutions.  See Giust Decl., Ex. 2, 135:1-144:14; *See also* Giust Decl.,

16   Exh. 5, at 10-20.  Also Streetline, Deteq Solutions, SP Plus, TransCore. *See* Giust

17   Decl., Ex. 2, 145:1-148:6; *See also* Giust Decl., Exhibit 6 at 42-61.

18        As described above, Mr. Williams was unable to describe any knowledge

19   concerning parking meters within the industry other than those from IPS & DPT

20   which he had personally worked on, and knew nothing about companies in the

21   industry, or the industry itself and its players. Plainly he cannot be qualified as an

22   industry expert. *See Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d, 1009,

23   1018-1020 (N.D. Ca. 2012) (Dr. Cummings not qualified to testify as to cigarette

24   design despite receiving grant money to support tobacco related research and

25   contributing to numerous papers); *Stockton East Water Dist. v. United States,* 109

26   Fed. Cl. 760, 783 (Fed. Cl. 2013) (note 20) (long-time, experienced employee of

27   plaintiff water district did not have the background to qualify as an expert witness

28   on water usage by a city).  The fact that Mr. Williams is familiar with only 7

1   parking meters from just two companies (IPS and DPT), while having no
2   knowledge anything from a plethora of other players is conclusive evidence that he
3   lacks knowledge of the wider industry as a whole.   "Even where a witness has
4   special knowledge or experience, qualification to testify as an expert also requires
5   that the area of the witness's competence matches the subject matter of the
6   witness's testimony." *See* 29 Charles A. Wright. et al., Federal Practice &
7   Procedure § 6265 at p. 255 & nn. 34 & 35 (1977).  Here, Mr. Williams' limited
8   knowledge on repair and maintenance of Culver City parking meters purchased
9   from two parties to this case does not match the proffered opinions concerning
10   industry wide practices and the technical area of non-obviousness.

11   Thus Mr. Williams should be precluded from testifying as to the opinions in
12   the "Background on the Parking Meter Industry" section of his report (Giust Decl.,
13   Ex. 1, ¶¶30-42) as he lacks the perspective of one in the "industry" for the reasons
14   stated above.  His specific opinions on non-obviousness should be excluded (Giust
15   Decl., Ex. 1, ¶¶43-89) for the same reasons.

16   **C.      Mr. Williams Has No Knowledge of City Procurement of Parking**
17   **Meters.**

18   The question of why cities buy parking meters of a certain type is plainly
19   critical to the opinions issued by Mr. Williams, which boil down to the assertion
20   that the IPS meters offer the benefit of the patented technology and were purchased
21   for that reason. *See* Giust Decl., Ex 1, ¶44-55 (long felt need); ¶56-66 (commercial
22   success); ¶67- 75 (industry praise); ¶76-79 (unexpected results); ¶80-82 (failure of
23   others); ¶83 (teaching away/ skepticism); ¶84-89 (alternatives).

24   Mr. Williams report indicates that he made purchasing decisions with
25   respect to parking meters (Ex. 1, ¶7), but in deposition he testified that this meant
26   that he purchased parts within mechanical meters, which is not relevant to this
27   case.  *See* Giust Decl., Ex. 2, 17: 7-23.  He testified that he contributed his
28   knowledge to the city during the process to buy new parking meters, but a "big

1  part" of what he considered was the responsiveness of the manufacturer. *See* Giust

2  Decl., Ex. 2, 108:13-21. Responsiveness here is unrelated to secondary indicia

3  and therefore not relevant to the inquiry on obviousness.

4      Even within Culver City, he testified the he had no knowledge of the

5  procedure for "obtaining information and bids with respect to parking meter

6  systems." Giust Decl., Ex. 2, 28:20-29:4. And he has no knowledge of the

7  procedures used by any other city. Giust Decl., Ex. 12, 30:13-18. And no

8  knowledge of specifications for parking meters desired by other cities or other

9  entities such as airports. Giust Decl., Ex. 2, 59:14-24; 60:18-61:4.

10     Thus, Mr. Williams has no expertise in how or why cities around the country

11 acquired the parking meters that they now have, since he knows nothing about the

12 acquisition process in any city other than Culver City.

13 **D.    Mr. Williams Has No Knowledge of Parking Meter Needs of**

14 **Cities Generally.**

15     While Mr. Williams had some responsibility with respect to repairing and

16 maintaining parking meters in Culver City, he has no experience with any other

17 entities or companies. Giust Decl., Ex. 2, 12:6-15. And he testified he had no

18 other jobs with respect to parking meters. Giust Decl., Ex 2, 25:12-14. While he is

19 somewhat familiar with the RFP process in Culver City he has no knowledge of

20 any RFP process in any other city. *See* Giust Decl., Ex 2, 12:17-24.

21     His expert report refers to his opinions regarding "cities" and

22 "Municipalities" throughout, but it was discovered at his deposition that these

23 terms were limited to a small subset of cities nearby Culver City, such as Los

24 Angeles, Long Beach, Santa Monica, Las Vegas, Manhattan Beach, and Monterey.

25 *See* Giust Decl., Ex. 2: 66:21-67:13; 68:1-69:12; 76:11-20; 126:6-13. And

26 moreover, he testified that cities have different needs, "all cities' needs are based

27 on that city" and "all cities have their own specifications as to what they are

28 looking for." Giust Decl., Ex. 2, 130:19-131:13; 134:1-19.

Mr. Williams' opinions on why "cities" or "Municipalities" in general do something with respect to parking meters are not founded on any expertise or knowledge that he may possess as he admitted to lacking such knowledge.

Even within Culver City, he had only limited knowledge of the pricing of parking meters, extending to repair/replacement cost and no knowledge of the total price. Giust Decl., Ex. 2, 88:20-90:20. He had no knowledge of profits. Giust Decl., Ex. 2, 93:3-9.

### E.   Mr. Williams Admits That He Is Not A Person of Ordinary Skill In The Art.

IPS' technical expert, Dr. Tajana Rosing, opines that "a person of ordinary skill in the art would have at least a bachelor's degree in electrical engineering, or the equivalent, and at least 3-5 years of experience designing or manufacturing electronic devices that operate off batteries and/or solar panels." Giust Decl., Ex. 7, at ¶40 (Rosing Report). Defendants' expert, Dr. Joshua Phinney, opines that person of ordinary skill in the art at the time of the alleged invention "would have a bachelor's degree in an engineering field (mechanical engineer, electrical engineering, or industrial engineering), and one to two years of experience in the design or manufacturing of parking meters, or the equivalent. See Ex. 8, at ¶17 (Phinney Report).

Mr. Williams lacks this level of expertise. He does not have a bachelor's degree and he did not graduate from college where he majored in Administrative Justice. Giust Decl., Ex. 2, 26:18-27:3. This major makes sense given his work experience as a police officer. Giust Decl., Ex. 1, ¶14. He stated that he does not have the equivalent of a bachelor's degree in engineering through work experience. Giust Decl., Ex. 2, 148:14-18 ("Q: Do you have the equivalent of a bachelor's degree in engineering through your work experience? THE WITNESS: No." objection omitted). Thus he fails the first part of both expert's criteria for a person of ordinary skill.

He admitted that he has not designed electronic devices that operate off batteries or solar panels, failing Dr. Rosing's second criteria for a person of ordinary skill.  Giust Decl., Ex. 2, 148:20-25 ("Q:  And you've not designed electronic devices that operate off batteries or solar panels; is that right?   THE WITNESS:  No." objection omitted).  He admitted that he cannot design a parking meter, failing Dr. Phinney's second criteria for a person of ordinary skill.  Giust Decl., Ex. 2, 28:3-5 ("Q. Well, let's say do you know how to design a parking meter?  A. No.").

Mr. Williams has never had any training or coursework in engineering or the design of electronic systems.  See Giust Decl., Ex. 2:13-23.  Mr. Williams has never consulted on parking meters, or authored any relevant publications, or published anything beyond his work at Culver City.  *See* Giust Decl., Ex. 2, 65:7-25; 66:7-20.

Obviousness and non-obviousness are assessed as to the level or ordinary skill in the art, as stated in *Graham v. John Deere Co.,* 383 U.S. 1 (1966).

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.   Against this background, the obviousness or non-obviousness of the subject matter is determined.   Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.   As indicia of obviousness or non-obviousness, these inquiries may have relevancy. *Id.* at 17-18.

As Mr. Williams lacks ordinary skill in the art, he cannot assesses the obviousness or non-obviousness of the claims under *Graham*.    Moreover, one must "look with care at a patent application that claims as innovation the

1    combination of two known devices according to their established functions . . . ."

2    *KSR Int'l v. Teleflex, Inc.,* 127 S. Ct. 1727, 1741 (U.S. 2007).   And "[I]t can be

3    important to identify a reason that would have prompted a person of ordinary skill

4    in the relevant field to combine the elements in the way that the claimed new

5    invention does." *Id.* Mr. Williams cannot be cross examined on what elements a

6    person of ordinary skill in the art would have been prompted to combine (or even

7    would have known), as he lacks the knowledge a person of ordinary skill would

8    possess.  Permitting his opinions on secondary indicia of non-obviousness is highly

9    prejudicial as he cannot be cross examined using the baseline knowledge of a

10   person of ordinary skill to probe his opinions and conclusions.

11        **F.    Mr. Williams Methodology is Suspect.**

12        Having no relevant background and no specialized knowledge of the parking

13   meter needs of the industry or of cities generally, Mr. Williams' methodology for

14   his "opinions" follow a simple format that this Court should reject:   provide an

15   unsupported conclusion based on his "experience" and follow it up with a partisan

16   summary of cherry picked documents produced by IPS' counsel that favor IPS.

17   *See* Giust Decl., Ex 1, ¶44-55 (long felt need); ¶56-66 (commercial success); ¶67-

18   75 (industry praise); ¶76-79 (unexpected results); ¶80-82 (failure of others); ¶83

19   (teaching away/ skepticism); ¶84-89 (alternatives).   In *Pooshs,* the Plaintiff's

20   expert Dr. Cummings did the same thing to no avail.

21        Defendants also assert that his methodology in this regard is not sound, as it

22        consists solely of reviewing various documents that he himself selected, and

23        producing a summary of those documents. Defendants contend that such

24        testimony would not assist the jury, and that it is not sufficiently reliable to

25        satisfy the requirements of *Daubert.*

26   *Pooshs,* 904 F.Supp. 2d 1009, at 1018.

27        In *Pooshs,* Dr. Cummings was prevented from providing opinions on

28   cigarette design even though he had a vast amount of experience with tobacco.  As

in *Pooshs*, this Court should preclude Mr. Williams from providing opinions as to the parking meter industry because his experience is also in a different field- repair and maintenance of parking meters, and because his methodology is unsound.  His actual role is that of a mere conduit to summarize data favorable to IPS.  This is contrary to Supreme Court precedent.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *G.E., Inc. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

## IV.   CONCLUSION.

For the reasons stated herein, IPS has not met its burden to prove by a preponderance of the evidence that Mr. Williams opinion testimony on the parking meter industry and/or its collective knowledge satisfies the requirements for admissibility. *See Daubert*, 509 U.S. at 592 n. 10.  The Court should exclude the testimony of Mr. Williams directed to the parking meter industry and to collective knowledge in the field (those opinions of Giust Ex. 1, ¶¶30-89).

Date: August 8, 2017                    WHGC, P.L.C.


                                        */s/ John E. Giust*
                                        John E. Giust.
                                        *Attorneys for Duncan Parking
                                        Technologies, Inc.*

1

## CERTIFICATE OF SERVICE

2      I hereby certify that the foregoing document was filed with the Court's

3   CM/ECF system which will provide notice on all counsel deemed to have

4   consented to electronic service.  All other counsel of record not deemed to have

5   consented to electronic service were served with a true and correct copy of the

6   foregoing document by mail on this day.

7

8   Dated: August 8, 2017                    Respectfully submitted,

9

10                                     By: */s/ John E. Giust*

11                                          John E. Giust
                                           *Attorneys for Duncan Parking Technologies, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28