UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPS GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> DUNCAN SOLUTIONS, INC. and DUNCAN PARKING TECHNOLOGIES, INC., <br><br> Defendants. | Case No.: 15-CV-1526-CAB-(MDD) <br><br> **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br> **[Doc. No. 103.]** |

Before the Court is Defendants Duncan Solutions, Inc. and Duncan Parking Technologies, Inc.'s ("Defendants") motion for summary judgment of non-infringement of United States Patent No. 7,854,310 ("the '310 patent"). [Doc No. 103.] The motion was fully briefed and argument was held on August 7, 2017. [Doc. Nos. 107, 111.] The Court finds that no reasonable jury could find that Defendants' accused device has all the elements of the asserted claims, and therefore the Defendants' motion is GRANTED.

**I.  Background**

Plaintiff IPS Group is the owner of the '310 patent for "Parking Meter." The claimed meter is battery-operated and rechargeable by solar-power. It is designed to accept payment by coin, credit or debit card with payment information electronically displayed

and conveyable to the user's cell phone. [Doc. No. 34-2 at 8-9, Col. 1:30-Col.3:44.][1] IPS alleges that Defendants' Liberty® Single-Space Meter ("Liberty Meter") infringes Claims 1-9 and 11 of the '310 patent. [Doc. No. 103-7 at 3, 17-63.] The asserted independent Claims 1 and 9 are set forth below:

> Claim 1. A parking meter including:
>
> a coin sensor;
>
> a card reader;
>
> an electronic device electrically connected to the sensor and reader so as to receive information electronically therefrom, the electronic device having a screen to provide information visually, a telephone connection to provide receiving information in respect of a card used in respect of said card reader, and connections for at least one rechargeable battery to power the reader, sensor and device;
>
> a solar cell operatively associated with said connections to charge said battery;
>
> a housing in which the coin sensor, card reader, and electronic device are located, said housing comprising an intermediate panel set and a cover panel, wherein the cover panel is movably attached to the intermediate panel set, and a surface of the cover panel and a surface of the intermediate panel set comprise a front face, and the front face surface of the cover panel includes a control panel having a window and a plurality of buttons that operate the parking meter upon manipulation by a user;
>
> a coin slot in the front face into which coins are inserted for deliver to the sensor and then to a coin receptacle;
>
> a card slot in the front face into which a card is inserted to be read by said

---

[1] Page cites refer to the ECF assigned page designations at the top of the docketed document.

reader;

a rear face comprising a surface of the cover panel and a surface of the intermediate panel set providing a window aperture via which said solar cell is exposed to light;

wherein the coin sensor and the card reader are electrically linked to provide information to the electronic device to provide information of whether payment has been made;

wherein the screen of the electronic device is visible through the window of the control panel when the cover panel is attached to the intermediate panel.

Claim 9. A parking meter comprising:

a housing comprising an intermediate panel set and a cover panel, the cover panel being movably attached to the intermediate panel set, wherein a first surface of the cover panel and a first surface of the intermediate panel set comprise a parking meter front face, the first surface of the cover panel having a first window and a plurality of buttons that operate the parking meter upon manipulation by a user, wherein a second surface of the cover panel and the second surface of the intermediate panel set comprise a parking meter rear face, the rear face surface of the cover panel providing a second window;

a module configured to be removably received by the housing, the module comprising

(a) a coin sensor,

(b) a card reader, and

(c) an electronic device electrically connected to the sensor and the reader so as to receive information electronically therefrom, the electronic device comprising

(i) a screen to provide information visually via the first window when the cover panel is attached to the intermediate panel set,

(ii) a telephone connection to provide receiving information in respect of the card reader,

(iii) a rechargeable battery electrically coupled to provide power to the reader, the sensor, and the electronic device, and

(iv) a solar cell operatively coupled with the rechargeable battery to charge the rechargeable battery, the solar cell being disposed to receive light via the second window;

a coin slot in the parking meter front face into which coins are inserted for delivery to the coin sensor and then to a coin receptacle; and

a card slot in the parking meter front face into which a card is inserted to be read by the reader;

wherein the coin sensor and the card reader are electronically linked to provide information to the electronic device to provide information of whether payment has been made.

[Doc. No. 34-2 at Col. 3:46 – Col. 4:13, Col. 4:36 – Col. 5:8.]

Both independent claims require a housing comprised of an intermediate panel set and a cover panel. In Claim 1, the front face of the housing cover panel includes a control panel that has a window (to allow viewing of an information screen contained within the housing) and buttons for the operation of the meter. [*Id.* at Col. 3:60-67 ("the front face surface of the cover panel includes a control panel having a window and a plurality of buttons that operate the parking meter upon manipulation by a user"). In Claim 9, the front face surface of the housing cover panel has a window and buttons for the operation of the meter. [*Id.* at Col. 4:41-44 ("the first surface of the cover panel having a first window and a plurality of buttons that operate the parking meter upon manipulation by a user").]

Defendants move for summary judgment of non-infringement on the basis that IPS cannot prove as a matter of law that the Liberty Meter has the claim limitation of a plurality

of buttons that operate the parking meter on the front surface of the housing cover panel, either literally or by the doctrine of equivalents.[2]

## II. Legal Standard

To prove direct infringement, a patentee must establish, by a preponderance of the evidence, that one or more claims of the patent read on the accused device literally or under the doctrine of equivalence. *See Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.* 261 F.3d 1329, 1336 (Fed Cir. 2001).

Pursuant of Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Summary judgment for the defendants on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents. *See PC Connector Solutions LLC v. Smartdisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir. 2005).

Determining whether a claim has been infringed requires a two-step analysis. First the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device. *Id.* at 1362.

## III. Claim Construction

The parties did not seek construction of any claims of the '310 patent in accordance with the local rules of this District. [Doc. No. 72.] In the context of Defendants' motion,

---

[2] Plaintiff moved to strike the declaration of Balu Subramanya or alternatively for relief under Rule 56(d). [Doc. No. 104.] The Court did not rely upon the Subramanya Declaration in reaching its decision, therefore Plaintiff's objections are deemed moot. Plaintiff's request for relief under Rule 56(d) is not properly supported by an affidavit or declaration as required and is therefore DENIED. *See Tatum v. City & County of S.F.,* 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.").

however, it became apparent that the parties do not agree as to the scope and meaning of certain terms of this patent. The Court therefore ordered submission of proposed constructions for certain terms pertinent to consideration of the motion. [Doc. No. 143.]

The parties submitted their briefs as to the terms the Court identified. [Doc. Nos. 160, 163.] Thereafter, the Court provided proposed constructions and held a hearing on August 7, 2017. The Court construed the terms of Claim 1 as follows:

| **a housing** | The exterior casing of the parking meter |
| **an intermediate panel set** | The lower structural component of the exterior casing |
| **a cover panel** | The upper structural component of the exterior casing |
| **the front face surface** | The surface of the exterior casing a user interacts with |
| **the front face surface of the cover panel** | The surface of the upper structural component of the exterior casing the user interacts with |

The Court construed the terms of Claim 9 as follows:

| **a housing** | The exterior casing of the parking meter |
| **an intermediate panel set** | The lower structural component of the exterior casing |
| **a cover panel** | The upper structural component of the exterior casing |
| **the parking meter front face** | The surface of the exterior casing a user interacts with |
| **the first surface of the cover panel** | The surface of the upper structural component of the exterior casing the user interacts with |
| **a module** | An independent unit that can be contained in the housing |

At the hearing, Defendants accepted the Court's proposed constructions without objection. Plaintiff accepted some of the constructions, but disagreed with the Court's proposed construction of "cover panel" and related "the front face (or first) surface of the cover panel" as too narrow.

Plaintiff argued that the term "cover panel" in the claim is not limited to a single structural component, such as what counsel referred to as the dome or hat of the housing,

6

but can also encompass other parts of the meter.³ Plaintiff contends that the scope of the claim term "cover panel" is limited only by the requirement that the component be movably, i.e., pivotally or slidably, attached to the intermediate panel set. Consequently, Plaintiff sought to construe the housing's cover panel to include any portion of a meter that is movably attached to the intermediate panel set and "conceals – i.e., covers – portions of the intermediate panel." [Doc. No. 34-2 at Col. 2:44-50; Doc. No. 107 at 13-15, fn.7.]

Plaintiff argued that the specification supports this construction of the term "cover panel" to include not only the hinged portion of the housing (16) – despite it being the only structure identified in the specification as the cover panel – but also extending to other external portions of the front face (17) of the meter if they are moveably attached to the intermediate panel set (15). Plaintiff therefore posited as an example that the coin slot (25) component of the meter as shown in the preferred embodiment is a cover panel of the housing because it purportedly slides over the intermediate panel set, covering or concealing it.⁴ This interpretation of "cover panel," extending it to any movable component of the meter that overlaps, or covers, the intermediate panel set, is not supported by the patent.

---

³ Notably, Plaintiff's Final Infringement Contentions, dated January 17, 2017, do not reflect the construction Plaintiff advanced in response to Defendants' summary judgment motion. Plaintiff's claim charts specifically identify the upper structural component of the housing (i.e., the hat or dome) as the cover panel limitation. [See Doc. No. 103-7 at 36, "Image showing how the cover panel is movably attached to the intermediate panel set."]

⁴ The patent does not disclose the coin slot component (25) to be movably attached to the intermediate panel set (15). The patent simply describes and claims the coin slot as an opening on the front face of the meter to allow for the delivery of coins to the coin sensor. [Doc. No. 34-2 at Col. 2:35-36, Col. 4:1-2, Col. 45:1-3.] The drawings [*id.* at Figures 1, 2 and 4] depict the coin slot structure as integrated into the front face of the intermediate panel set, but there is no indication that it is movably attached to the intermediate panel set and it is not a fixed inset in the intermediate panel. Figure 4 illustrates the cover panel of the housing as open [*id.* at Col. 2:46-49, Figure 4] but does not show the coin slot as separable from the intermediate panel set. Plaintiff used its own commercial embodiment of the patented invention at the hearing to demonstrate a configuration of the coin slot component that slides into and partially overlaps the intermediate panel set. Plaintiff offered no citation to the patent that the coin slot as claimed and depicted in the patent is moveably attached to the intermediate panel such that it would be reasonably interpreted as part of the housing cover panel.

Plaintiff agreed that the housing is the exterior casing of the parking meter. The claims require the housing be comprised of the intermediate panel set and the cover panel, those panels comprising the front face of the meter. "Comprising" as a term of art in claim language, does not exclude additional elements, so while there may be other parts or elements to the housing and the front face of the housing, the intermediate panel set and cover panel are named elements essential to the housing.

The claim also recites that "in the front face" of the meter, there is a coin slot and a card slot but their structures, unlike the claimed window and buttons, are not identified as parts of the cover panel of the housing. The cover panel of the housing is unequivocally identified in the specification as the upper structure of the housing (16), or "hat" as Plaintiff's counsel referred to it. [Doc. No. 34-2 at Col.2:30-34, 44-52, 66-67, Figures 1, 2 and 4.] The patent describes Figure 4 as the cover panel of the housing in the open position. [*Id*. at Col 2:46-49., Figure 4.] The patent does not indicate that a portion of the cover panel is open in this figure; it states the cover panel is in the open position. The Court is unpersuaded by Plaintiff's interpretation that the scope of the housing cover panel extends to any movable component of the meter that conceals, i.e., covers, a portion of the intermediate panel set. The Court construes the cover panel of the housing as "the upper structural component of the exterior casing."

### IV. Limitations of Claims 1 and 9 are Absent from the Accused Device

Comparing Claim 1 of the patent to the accused Liberty Meter, the limitation that "**the front face surface of the cover panel includes a control panel having a window and a plurality of buttons that operate the parking meter upon manipulation by a user**" is absent.

8

15-CV-1526-CAB-(MDD)

Below is the accused Liberty Meter.



The cover panel, here depicted in an open position, does not have a control panel on its face with "a window and a plurality of buttons that operate the parking meter." The cover panel has a window, but no control panel or buttons to operate the meter. The front face of the meter has a keypad used to operate the meter however the keypad is not located on the cover panel. Similarly, Claim 9 of the patent has the limitation that "**the first surface of the cover panel ha[s] a first window and a plurality of buttons that operate the parking meter upon manipulation by a user**."

The surface of the cover panel of the Liberty Meter does not have a plurality of buttons that operate the meter.

"If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000). The Court concludes no reasonable jury could find that the accused Liberty Meter literally has all the limitations of Claims 1 and 9. As the other asserted Claims, 2-8 and 11, all depend from these claims, they cannot be infringed, as well. *See London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

## V. Infringement under the Doctrine of Equivalents

Plaintiff argues that even if there is no literal infringement, it may prevail under the doctrine of equivalents ("DOE"). [Doc. No. 107 at 15-17.] Plaintiff's expert Dr. Tajana Rosing opined that the Liberty Meter's keypad is the equivalent to a "plurality of buttons" that operate the parking meter upon manipulation by the user. [Doc. No. 110 at ¶¶ 18-20.] She contends that because the Liberty Meter's keypad performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed buttons, "the difference between where the buttons are located in the literal claim

and the location of the buttons that defendants would advance is at most an insubstantial difference." [*Id.* at ¶ 18.]

The test of the equivalence is ordinarily a factual inquiry reserved for the finder of fact. It is the role of the court, however, to ensure that the doctrine of equivalents is not permitted to overtake the statutory function of the claims in defining the scope of the patentee's exclusive rights. *See Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1356 (Fed. Cir. 2012).

The equivalence is assessed on a limitation-by-limitation basis, not from the perspective of the invention as a whole. The "all elements rule" provides that the DOE does not apply if applying the doctrine would vitiate an entire claim limitation. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29 (1979) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").

The equivalents cannot extend or enlarge the scope of the claims. The claims – i.e., the scope of the patent protection as defined by the claims – remain the same and application of the doctrine expands the right to exclude to equivalents of what is claimed. The DOE is not a license to ignore claim limitations. *Dolly, Inc., v. Spalding & Evenflo Cos., Inc.,* 16 F.3d. 394, 398 (Fed. Cir. 1994).

Courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005). "If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents." *Deere & Co,* 703 F.3d at 1356, *citing Warner-Jenkinson Co.,* 520 U.S. at 39 n.8.

Defendants contend that the DOE is unavailable to Plaintiff for three reasons. First, Defendants assert that Plaintiff failed to comply with this District's Local Patent Rule 3.1,

requiring plaintiff provide a chart for each asserted claim identifying with specificity where each element of the claim is found literally or under the DOE within each accused instrumentality. [Doc. No. 103 at 15-16; Doc. No.103-7 at 34-36.] Having failed to make an adequate disclosure, Defendants argue Plaintiff should not be permitted to supplement its infringement disclosure through the expert report to advance a theory under the DOE.

The Court agrees that Plaintiff's infringement contentions are inadequate under the District's Patent Local Rule 3.1. Plaintiff's final claim chart comparing the housing limitations of Claims 1 and 9 to the accused Liberty Meter does not specifically identify where each claim limitation is found on the accused device. It simply makes a conclusory assertion they are present by referring to an image of the meter.

Image of the housing showing the cover panel, intermediate panel set, front face, control panel and window, and plurality of buttons



[Doc. No. 103-7 at 35.]

The rules require each limitation be identified on the accused device. Plaintiff's "it's all there" disclosure falls woefully short of the requisite specificity. An objection as to the adequacy of the disclosure and a motion for a supplemental disclosure would have been granted.

The report of Plaintiff's expert supplemented the shortcomings of Plaintiff's infringement contentions, providing her opinion of where the limitation of a cover panel with a window and buttons is found on the accused device. Defendants had an opportunity to respond to this opinion in their reply. Therefore, although Defendants' procedural

objection is well-taken, the Court addresses Plaintiff's infringement assertions under DOE on the merits.

Defendants second contention is that a DOE assertion is unavailable to Plaintiff under *Festo* because Plaintiff added the housing element, including the cover panel that has a window and operating buttons, during prosecution to overcome a prior art rejection. [Doc. No. 103, at 12-13, 17.] Defendants argue that Plaintiff made a narrowing amendment during the prosecution of the patent to obtain allowance of the claims and therefore cannot recapture a broader scope. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 734, 736-37 (Prosecution history estoppel "presumptively applies when the applicant made a narrowing claim amendment related to patentability."). Defendants cite to a July 2009 Patent Office action in which all the then-pending claims of the '310 patent application were rejected as unpatentable over the prior art. [Doc. No. 103-5.]

The meter of Claim 1 as originally drafted had the limitation of "a body having a front face having a coin slot…a card slot…, and a rear face providing a window via which said solar cell is exposed to light, and providing visual access to said display." [Doc. No. 107-6 at 6.] Dependent Claim 5 added "controls at said front face via which a user can operate the parking meter." [*Id.*] The examiner found that the Wong reference, U.S. Patent No. 6,309,098, disclosed a meter with a body having a front face panel with operator controls, coin and card slots, and a display window, and a rear face a having solar cell window. [Doc. No. 103-5 at 5.]

In response, Plaintiff amended the claims to overcome the rejection. The new Claim 1 introduced a housing comprised of an intermediate panel set and a cover panel. Claim 5 was canceled and the operator controls recited in Claim 5 were incorporated into the new Claim 1, not as previously recited "at the front face" of the housing, but specifically located on the front face of the housing cover panel along with the display window. Plaintiff represented that the cited references did not include the features as recited in the new Claim 1, including "a housing as configured." [Doc. No. 103-4 at 9.] The patent was then allowed.

12

Plaintiff's amendment narrowed the scope of the claim. Claim 1 as originally filed did not included the limitation of controls to operate the meter. Dependent Claim 5 added that limitation reciting it broadly as controls at the front face to operate the meter. The examiner found this configuration was disclosed by Wong. Plaintiff amended Claim 1 to include operator controls, not "at the front face," but specifically as a plurality of buttons to operate the meter on the front face of the cover panel of the housing. Having narrowed the scope of the claim in response to a rejection, a plaintiff "may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Festo*, 535 U.S. at 733-34; *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1358 (Fed. Cir. 2013) (an amendment made to avoid prior art that contains the equivalent in question is not tangential).

In this case, Plaintiff wishes to capture as an equivalent to the literal claim language, a keypad that controls the operation of the meter, which although at the front face of the meter, is not physically located on the cover panel. Plaintiff originally claimed the operational controls to be at the front face, but in response to a prior art rejection, narrowed the configuration of the housing to limit the controls to a plurality of buttons on the cover panel. Plaintiff is estopped from recapturing under the DOE the broader configuration that previously only required the controls be on the front face of the meter.

Finally, Defendants contend that the structural difference between the accused Liberty Meter and the express claim language, is not an insubstantial difference. The asserted claims require the buttons be located on the cover panel of the meter housing. The DOE cannot extend to meters with buttons not on the cover panel of the housing without vitiating the "on the cover panel" limitation altogether. *See Asyst Tech., Inc. v. Emtrack, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (To hold that "unmounted" is equivalent to "mounted" would effectively read the "mounted on" limitation out of the patent.).

## VI. Conclusion

For all the reasons set forth above, the Court concludes that no reasonable jury could find infringement under the DOE.

Defendants' motion for summary judgment of non-infringement of the '310 patent is **GRANTED**.

It is **SO ORDERED**.

Dated: August 16, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge